## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| JRV Group USA L.P.[1] | Case No. 19-11095 (CSS) |
| Debtor. | **Ref. Docket No. 7** |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503
AND 507 AND FED. R. BANKR. P. 2002, 4001, 6004 AND 9014
(I) AUTHORIZING DEBTOR TO OBTAIN SENIOR SECURED,
SUPERPRIORITY, POSTPETITION FINANCING, (II) GRANTING LIENS
AND SUPERPRIORITY CLAIMS, (III) APPROVING USE OF CASH
COLLATERAL OF PREPETITION LENDERS, (IV) GRANTING
ADEQUATE PROTECTION TO PREPETITION LENDERS, (V)
MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING
FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Upon the Motion, dated May 13, 2019 (the "**Motion**"), of JRV Group USA L.P.,

a Delaware limited partnership (the "**Debtor**"), pursuant to sections 105, 361, 362, 363,

364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e), 503 and 507 of title 11 of the United

States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004 and 9014 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 2002-1,

4001-2 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the

United States Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy**

**Rules**"), seeking entry of an interim order (this "**Interim Financing Order**") and final

order (the "**Final Financing Order**"):

    (i)        authorizing the Debtor to obtain postpetition financing pursuant to a senior

              secured, superpriority debtor-in-possession multi-draw term credit facility

              (the "**DIP Facility**"; the loans incurred thereunder, the "**DIP Loans**") in

---

[1] The last four digits of JRV Group USA L.P.'s federal tax identification number are (5218), The mailing address for JRV Group USA L.P. is 1945 Burgundy Place, Ontario, CA 91761.

an aggregate principal amount of up to $3,300,000 on the terms and conditions set forth in the term sheet attached hereto as <u>Exhibit 1</u> (the "**DIP Term Sheet**")[2], by and among the Debtor and Corner Flag LLC, a Delaware limited liability company (the "**DIP Lender**");

(ii)        authorizing the Debtor to execute and deliver the DIP Term Sheet and other documentation, including Long-Form Documentation[3], security agreements, pledge agreements, mortgages, guaranties, promissory notes, certificates, instruments, and such other documentation which may be necessary or required to implement the DIP Facility and perform thereunder and/or that may be reasonably requested by the DIP Lender, in each case, as amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof and hereof (collectively, together with the DIP Term Sheet, the "**DIP Loan Documents**"; all loans, advances, extensions of credit, financial accommodations, fees, costs, expenses and other liabilities, all other obligations (including indemnities and similar obligations, whether contingent or absolute) and all other amounts due or payable under the DIP Loan Documents, collectively, the "**DIP Obligations**"), and to perform such other and further acts as may be necessary, desirable or appropriate in connection therewith;

---

[2]Capitalized terms used herein but not otherwise defined herein shall have the meanings given to them in the DIP Term Sheet.

[3]To the extent that Long-Form Documentation is entered into pursuant to and in accordance with the terms of the DIP Term Sheet, all references herein to "DIP Term Sheet" shall be deemed references to such Long-Form Documentation.

(iii)        granting to the DIP Lender allowed superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code in respect of all DIP Obligations, and valid, enforceable, non-avoidable and automatically perfected liens on and security interests in all DIP Collateral (as defined below), pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, to secure the DIP Obligations, in each case as and to the extent, and subject to the relative ranking and priorities (and, in any event, junior to the Carve-Out), set forth in this Interim Financing Order;

(iv)        authorizing the Debtor to use proceeds of the DIP Facility and all Cash Collateral (as defined below), solely in accordance with the Approved Budget (subject to the Permitted Variance), this Interim Financing Order and the DIP Loan Documents;

(v)         providing contingent adequate protection to the Prepetition Lenders (as defined below) for any Diminution in Value (as defined below) of their interests in the Prepetition Collateral (as defined below), including Cash Collateral, in each case, as and to the extent set forth in this Interim Financing Order;

(vi)        authorizing the Debtor to pay all costs and expenses due pursuant to the DIP Term Sheet and the other DIP Loan Documents;

(vii)        vacating or modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Financing Order;

(viii)       scheduling a final hearing (the "**Final Hearing**") to consider entry of the Final Financing Order granting the relief requested in the Motion on a final basis and approving the form of notice with respect to the Final Hearing and the transactions contemplated by the Motion; and

(ix)         waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Interim Financing Order and providing for the immediate effectiveness of this Interim Financing Order.

The Court, having considered the Motion, the terms of the DIP Facility, the DIP Term Sheet and the declaration of Andrew De Camara (the "**De Camara Declaration**") filed in support of the Motion, and the evidence submitted at the interim hearing held before this Court on May 15, 2019 (the "**Interim Hearing**") to consider entry of this Interim Financing Order; and in accordance with Bankruptcy Rules 4001(b)(2) and (c)(2), due and proper notice of the Motion and the Interim Hearing having been given; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor pending the Final Hearing, and is essential for the continued operation of the Debtor's business; and all objections, if any, to the entry of this Interim Financing Order having been withdrawn, resolved or

4

overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

### THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW[4]

**A.**      **Petition Date.**

On May 13, 2019 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware commencing the chapter 11 case (the "**Case**").

**B.**      **Debtor-in-Possession.**

The Debtor is continuing to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Case.

**C.**      **Jurisdiction and Venue.**

The Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Case and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The bases for the relief sought in the Motion and granted in this Interim Financing Order are sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014, and the Local Bankruptcy Rules.

---

[4] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. To the extent any findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are adopted as such.

D.    **Notice.**

Notice of the Interim Hearing and the relief requested in the Motion has been provided by facsimile, electronic mail or overnight mail to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee for the District of Delaware; (b) the Internal Revenue Service; (c) the Debtor's twenty largest unsecured creditors; (d) the Prepetition Lenders and the DIP Lender and their respective counsel; (e) any party of record that has asserted a lien in the Debtor's assets; (f) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002; and (g) applicable state taxing authorities (collectively, the "**Notice Parties**"). Under the circumstances, requisite notice of the Motion and the relief requested thereby has been provided in accordance with the Local Bankruptcy Rules and the Bankruptcy Rules.

E.    **Committee Formation.**

As of the date hereof, no statutory committee ("**Committee**") has been appointed in the Case.

F.    **Debtor's Stipulations.**

In requesting the DIP Facility, and in exchange for and as a material inducement to the DIP Lender to agree to provide the DIP Facility, without prejudice to the rights of any Committee or other non-Debtor party-in-interest with requisite standing (but subject to the limitations thereon described in paragraph 13 below), the Debtor hereby acknowledges, agrees and stipulates (collectively, the "**Debtor's Stipulations**") that:

(i)    Pursuant to that certain (v) Promissory Note dated as of February 14, 2019 (as amended, restated, supplemented or

6

otherwise modified from time to time, the "**February Note**" and,
together with all documentation, including security agreements,
pledge agreements, guaranties, promissory notes, certificates,
instruments and other documentation, executed and/or delivered in
connection therewith, in each case, as amended, restated,
supplemented or otherwise modified in accordance with the terms
thereof, the "**February Loan Documents**"), among the Debtor, as
co-borrower, JRV Group Holding USA L.P., a Delaware limited
partnership ("**Holdings**"), as co-borrower, and Corner Flag LLC,
as lender (in such capacity, the "**February Lender**"), (w)
Promissory Note dated as of March 4, 2019 (as amended, restated,
supplemented or otherwise modified from time to time, the
"**March 4 Note**" and, together with all documentation, including
security agreements, pledge agreements, guaranties, promissory
notes, certificates, instruments and other documentation, executed
and/or delivered in connection therewith, in each case, as amended,
restated, supplemented or otherwise modified in accordance with
the terms thereof, the "**March 4 Loan Documents**"), among the
Debtor, as borrower, and Holdings, as lender (in such capacity, the
"**March 4 Lender**"); (x) Promissory Note dated as of March 26,
2019 (as amended, restated, supplemented or otherwise modified
from time to time, the "**March 26 Note**" and, together with all
documentation, including security agreements, pledge agreements,

guaranties, promissory notes, certificates, instruments and other documentation, executed and/or delivered in connection therewith, in each case, as amended, restated, supplemented or otherwise modified in accordance with the terms thereof, the "**March 26 Loan Documents**") among the Debtor, as borrower, and Holdings, as lender (in such capacity, the "**March 26 Lender**"); (y) Promissory Note dated as of April 25, 2019 (as amended, restated, supplemented or otherwise modified from time to time, the "**April 25 Note**" and, together with all documentation, including security agreements, pledge agreements, guaranties, promissory notes, certificates, instruments and other documentation, executed and/or delivered in connection therewith, in each case, as amended, restated, supplemented or otherwise modified in accordance with the terms thereof, the "**April 25 Loan Documents**") among the Debtor, as borrower, and Holdings, as lender (in such capacity, the "**April 25 Lender**"); and (z) Promissory Note dated as of May 8, 2019 (as amended, restated, supplemented or otherwise modified from time to time, the "**May 8 Note**" and, together with all documentation, including security agreements, pledge agreements, guaranties, promissory notes, certificates, instruments and other documentation, executed and/or delivered in connection therewith, in each case, as amended, restated, supplemented or otherwise modified in accordance with the terms thereof, the "**May 8 Loan**

8

**Documents**") among the Debtor, as borrower, and Holdings, as lender (in such capacity, the "**May 8 Lender**"; the February Note, the March 4 Note, the March 26 Note, the April 25 Note and the May 8 Note, together, the "**Prepetition Notes**"; and the February Loan Documents, the March 4 Loan Documents, the March 26 Loan Documents, the April 25 Loan Documents and the May 8 Loan Documents, together, the "**Prepetition Loan Documents**"; the February Lender, the March 4 Lender, the March 26 Lender, the April 25 Lender and the May 8 Lender, together, the "**Prepetition Lenders**"), the Prepetition Lenders provided the Debtor with loans aggregating $490,000, in the case of the February Note, $1,500,000, in the case of the March 4 Note, $500,000, in the case of the March 26 Note, $450,000, in the case of the April 25 Note, and $500,000, in the case of the May 8 Note;

(ii)    As of the Petition Date, the Debtor was indebted to the Prepetition Lenders in the principal amount of not less than $490,000, in the case of the February Note, $1,500,000, in the case of the March 4 Note, $500,000, in the case of the March 26 Note, $450,000, in the case of the April 25 Note, and $500,000, in the case of the May 8 Note, in each case plus any other amounts incurred or accrued but unpaid as of the Petition Date, including, without limitation, accrued and unpaid interest, any indemnification obligations (whether contingent or absolute), any costs, charges, expenses and

9

disbursements (including, without limitation, attorneys' fees), all other liabilities and all other amounts due, owing or payable, including all "Obligations" as defined in the Prepetition Loan Documents, in each case, as and to the extent provided in the Prepetition Loan Documents (collectively, the "**Prepetition Obligations**");

(iii)    to secure the Prepetition Obligations, the Debtor granted to the Prepetition Lenders properly perfected and continuing security interests in and liens (the "**Prepetition Liens**") upon all of its "Collateral" under and as defined in the Prepetition Loan Documents (collectively, the "**Prepetition Collateral**");

(iv)    (a) the Prepetition Obligations constitute legal, valid, enforceable and binding obligations of the Debtor; (b) no offsets, challenges, objections, defenses or counterclaims to the Prepetition Obligations of any kind or nature whatsoever exist; (c) no portion of the Prepetition Obligations is subject to avoidance, disallowance, disgorgement, impairment, recharacterization, contribution, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (d) the Prepetition Loan Documents are valid and enforceable by the Prepetition Lenders against the Debtor; (e) the Prepetition Liens were fully and properly perfected prior to the Petition Date and constitute legal, valid, binding, enforceable and perfected liens in

10

and to the Prepetition Collateral, were granted to the Prepetition Lenders for fair consideration and reasonably equivalent value, and are not subject to avoidance, reduction, disallowance, impairment, recharacterization, contribution, disgorgement, counterclaim or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (f) the Prepetition Liens have priority over any and all other prepetition liens (if any) on the Prepetition Collateral, subject only to the Permitted Encumbrances (as defined below); (g) the Prepetition Obligations constitute allowed secured claims, within the meaning of sections 502 and 506 of the Bankruptcy Code, against the Debtor's estate to the extent of the value of the Prepetition Collateral; and (h) as of the date of this Interim Financing Order, the Debtor and its estate have no claim (as defined in the Bankruptcy Code), objection, challenge, defense, counterclaim or cause of action against any of the Prepetition Lenders or any of their respective affiliates, subsidiaries, agents, officers, directors, shareholders, employees, members, managers, agents, attorneys, advisors, professionals, predecessors in interest, successors and assigns (solely in their respective capacities as such) (collectively, the "**Prepetition Released Parties**") of any kind or nature whatsoever, arising under applicable state or federal law (including, without limitation, any so-called lender liability or equitable subordination claims or defenses, any right to assert any

11

disgorgement or recovery, recharacterization, contribution, subordination, impairment, avoidance or other claims (whether arising under or pursuant to section 105, 510 or 542 through 553 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law or otherwise), arising under, in connection with or related to any of the Prepetition Loan Documents, the Prepetition Obligations or the Prepetition Liens), and the Debtor on behalf of itself and its estate hereby forever waives and releases any and all such claims, objections, challenges, defenses, counterclaims or causes of action.

**G.    <u>Permitted Encumbrances.</u>**

Nothing herein shall constitute a finding or ruling by the Court that any alleged Permitted Encumbrance is valid, senior, enforceable, prior, perfected, or non-avoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to the Debtor, the DIP Lender or the Prepetition Lenders, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Encumbrance.

**H.    <u>Immediate Need for Postpetition Financing.</u>**

The Debtor has requested immediate entry of this Interim Financing Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules. Good cause has been shown for immediate entry of this Interim Financing Order pursuant to such rules. An immediate need exists for the Debtor to obtain funds and liquidity in order to, as the case may be, finance its operations, pay the costs and

expenses of administering the Case, and administer and preserve the value of its business and estate. The ability of the Debtor to finance its operations, to preserve and maintain the value of its assets and to maximize the return for all creditors requires the availability of the DIP Facility and the use of Cash Collateral. In the absence of the availability of such funds and liquidity in accordance with the terms hereof, the continued operation of the Debtor's operations would not be possible, and serious and irreparable harm to the Debtor and its estate, creditors and other stakeholders would occur. Thus, the ability of the Debtor to preserve and maintain the value of its assets and maximize the return for creditors requires the availability of liquidity from the DIP Facility and the use of Cash Collateral.

**I.        No Credit Available on More Favorable Terms.**

The Debtor has been unable to obtain (a) adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or (b) credit for money borrowed with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of the Bankruptcy Code. The Debtor has been unable to obtain credit for borrowed money without granting the DIP Liens, the DIP Superpriority Claim (as defined below) and certain other protections set forth herein to (or for the benefit of) the DIP Lender. Moreover, the Debtor was unable to obtain financing from sources other than the DIP Lender on more favorable terms and conditions than the terms and conditions of the DIP Facility.

**J.        Need for Use of Cash Collateral.**

The Debtor's cash constitutes "cash collateral" (as defined in section 363(a) of the Bankruptcy Code) of the Prepetition Lenders ("**Cash Collateral**"). An immediate and

critical need exists for the Debtor to use the Cash Collateral (in addition to the DIP Facility) to continue to operate and generally conduct its operations so as to avoid immediate and irreparable harm to its estate and the value of its assets.

      **K.**      **Extension of Financing.**

The DIP Lender has indicated a willingness to provide financing to the Debtor in accordance with the DIP Term Sheet and the other DIP Loan Documents, subject to (i) the entry of this Interim Financing Order, including, among other things, approval of the benefits and protections for the DIP Lender contained herein, (ii) approval of the DIP Loan Documents, and (iii) findings by this Court that such financing is essential to the Debtor's estate (and the continued operation of the Debtor), that the DIP Lender is a good faith financier, and that the DIP Lender's claims, superpriority claims, security interests and liens and other protections granted pursuant to and in connection with this Interim Financing Order (and the Final Financing Order) and the DIP Facility (including the DIP Superpriority Claim and the DIP Liens), will not be affected by any subsequent reversal, modification, *vacatur*, stay or amendment of, as the case may be, this Interim Financing Order, the Final Financing Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

      **L.**      **Use of Proceeds of the DIP Facility and Cash Collateral.**

As a condition to entry into the DIP Facility, the extensions of credit thereunder and the authorization to use Cash Collateral, the Prepetition Lenders require, and the Debtor has agreed, that (i) proceeds of the DIP Facility shall be used solely for the purposes set forth herein and in the DIP Term Sheet and the other DIP Loan Documents, in each case in accordance with the Approved Budget (subject to the Permitted Variance),

and (ii) Cash Collateral shall not be used in a manner prohibited by this Interim Financing Order and, in any event, shall be used in accordance with the Approved Budget (subject to the Permitted Variance).

M.      **Adequate Protection.**

The Prepetition Lenders are each entitled, pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code, to receive adequate protection against any diminution in the value of each of their respective interests in the Prepetition Collateral (including Cash Collateral) arising from the stay of action against such property under section 362 of the Bankruptcy Code, from the use, sale or lease of such property under Section 363 of the Bankruptcy Code, or from the grant of a lien under Section 364(d) of the Bankruptcy Code (collectively, and solely to the extent of any such diminution in value, the "**Diminution in Value**") as set forth herein. The adequate protection provided in this Interim Financing Order is reasonable and sufficient to protect the interests of the Prepetition Lenders.

N.      **Business Judgment and Good Faith Pursuant to Section 364(e).**

(i)      The Debtor, in consultation with its advisors, concluded that the DIP Facility represents the best available financing under the circumstances. The DIP Term Sheet and the other DIP Loan Documents were negotiated in good faith and at arm's length among the Debtor and the DIP Lender. The terms and conditions of the DIP Facility, the DIP Term Sheet and the other DIP Loan Documents are fair, reasonable, and the best available under the circumstances, reflect the Debtor's exercise of prudent business

judgment consistent with its fiduciary duties, and constitute reasonably equivalent value and consideration.

(ii)      All obligations incurred, payments made, and transfers or grants of security set forth in this Interim Financing Order, the DIP Term Sheet and the other DIP Loan Documents by the Debtor are granted to or for the benefit of the Debtor for fair consideration and reasonably equivalent value, and are granted contemporaneously with the making of the loans and/or commitments and other financial accommodations secured thereby.

(iii)      The credit to be extended under the DIP Term Sheet, the DIP Facility and the other DIP Loan Documents shall be deemed to be extended by the DIP Lender in good faith and for valid business purposes and uses, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Lender (and its successors and assigns) is entitled to the full protection and benefits of section 364(e) of the Bankruptcy Code whether or not this Interim Financing Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

O.     **Relief Essential; Best Interest.**

The relief requested in the Motion (and provided in this Interim Financing Order) is necessary, essential and appropriate for the continued operation of the Debtor's business and the management and preservation of its assets and property. It is in the best interest of the Debtor's estate that the Debtor be allowed to enter into the DIP Term Sheet and the other DIP Loan Documents, incur the DIP Obligations and grant the liens and

claims contemplated in the DIP Term Sheet, in this Interim Financing Order and under the other DIP Loan Documents to the DIP Lender and the Prepetition Lenders.

**NOW, THEREFORE,** on the Motion of the Debtor and the record before this Court with respect to the Motion, including the record made during the Interim Hearing and the De Camara Declaration, and with the consent of the Prepetition Lenders, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1. **Motion Granted**. The Motion is hereby granted on an interim basis in accordance with the terms and conditions set forth in this Interim Financing Order. Any objections to the Motion with respect to entry of this Interim Financing Order to the extent not withdrawn or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled.

2. **Authorization of DIP Facility.**

(a)     The DIP Facility is hereby approved. The Debtor is hereby authorized to enter into the DIP Term Sheet and the other DIP Loan Documents and to pay all DIP Obligations without further order of the Court. The Debtor is hereby authorized to borrow money pursuant to the DIP Loan Documents up to the aggregate amount of the Interim Financing (as defined below) in accordance with and subject to the terms of this Interim Financing Order and the DIP Loan Documents.

(b)     In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the

execution or recordation of any DIP Loan Documents), and to pay all fees, that may be required or necessary for the Debtor's performance of its obligations under the DIP Facility, including, without limitation:

    (i)        The execution, delivery and performance of the DIP Term Sheet and the other DIP Loan Documents, including, without limitation, the creation and perfection of the DIP Liens described and provided for herein; and

    (ii)       The performance of all other acts that may be necessary, required or advisable under or in connection with the DIP Term Sheet and the other DIP Loan Documents.

    (c)       The DIP Term Sheet and the other DIP Loan Documents shall represent, constitute and evidence the DIP Obligations, and the DIP Loan Documents and DIP Obligations shall be valid and binding obligations of the Debtor, enforceable against the Debtor, its estate and any successors thereto, including without limitation, any trustee appointed in the Case or any case under chapter 7 of the Bankruptcy Code upon conversion of the Case (collectively, the "**Successor Case**") in accordance with the terms thereof and this Interim Financing Order. All obligations incurred, payments made, and transfers or grants of security set forth in this Interim Financing Order, the DIP Term Sheet or the other DIP Loan Documents by the Debtor are granted to or for the benefit of the DIP Lender for fair consideration and reasonably equivalent value, and are granted contemporaneously with the making of the loans and/or commitments and

18

other financial accommodations secured thereby. No obligation incurred, payment made, transfer or grant of security set forth in this Interim Financing Order, the DIP Term Sheet or the other DIP Loan Documents, in each case whether pre- or post-petition, by the Debtor as approved under this Interim Financing Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, subordination, setoff, recoupment, contribution, counterclaim or any other challenge under the Bankruptcy Code or any applicable non-bankruptcy law, rule or regulation.

(d)      **Authorization for Interim Financing**. In order to continue the Debtor's operations, from the entry of this Interim Financing Order through the DIP Termination Date (as defined below), subject to the terms and conditions of this Interim Financing Order, the DIP Term Sheet and the other DIP Loan Documents, the Debtor is hereby authorized to borrow up to $3,200,000 (the "**Interim Financing**"), incurred pursuant to, and in accordance with, this Interim Financing Order, the DIP Term Sheet and the other DIP Loan Documents.

3.      **Use of Cash Collateral.** Subject to the terms and conditions of this Interim Financing Order, the DIP Term Sheet and the other DIP Loan Documents, including the Approved Budget (subject to the Permitted Variance), the Debtor is authorized to use Cash Collateral from the entry of this Interim Financing Order through a Cash Collateral Termination Event (as defined below), subject to the terms and

conditions of this Interim Financing Order (including the notice period set forth in paragraph 19(b) hereof). Nothing in this Interim Financing Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business, or the Debtor's use of (i) any proceeds of the DIP Facility, except as permitted by the Approved Budget (subject to the Permitted Variance), this Interim Financing Order and the DIP Loan Documents or (ii) any Cash Collateral in a manner prohibited by this Interim Financing Order or in any manner not in accordance with the Approved Budget (subject to the Permitted Variance).

4.      **DIP Liens.** Immediately upon the entry of this Interim Financing Order, and effective as of the Petition Date, in order to secure the DIP Obligations, the DIP Lender is hereby granted valid, binding, fully and automatically perfected, continuing, enforceable and non-avoidable liens and security interests (collectively, the "**DIP Liens**") in the DIP Collateral as collateral security for the prompt and complete performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of the DIP Obligations. The term "**DIP Collateral**" shall mean all prepetition and postpetition assets and properties (real and personal) of the Debtor, including all "Collateral" as defined in the DIP Term Sheet, whether now owned by or owing to, or hereafter acquired by, or arising in favor of, the Debtor (including under any trade names, styles, or derivations thereof), whether owned or consigned by or to, or leased from or to, the Debtor, and wherever located including, without limitation, all cash and cash equivalents of the Debtor wherever located including, inventory, accounts and accounts receivable, other rights to payment, contracts, instruments, documents and chattel paper, all securities (whether or not marketable), goods, equipment, inventory and fixtures, all real

and leasehold property interests, general intangibles, patents, copyrights, trademarks, trade names and all other intellectual property, capital stock, investment property, all books and records, commercial tort claims (including, subject to the approval of the Court in the Final Financing Order, the proceeds of all claims and causes of action arising under chapter 5 of the Bankruptcy Code) and all accessions to, substitutions and replacements for, and rents, proceeds, profits and products of, each of the foregoing.

     5.    **Priority of DIP Liens**.

The DIP Liens shall have the following priorities (in each case subject to the Carve-Out):

(i)        pursuant to section 364(c)(2) of the Bankruptcy Code, a first-priority perfected lien on, and security interest in, all DIP Collateral that is not subject to a valid, perfected, enforceable and unavoidable lien or security interest on the Petition Date or subject to a valid lien or security interest in existence on the Petition Date that is perfected subsequent thereto as expressly permitted by section 546(b) of the Bankruptcy Code (the "**Permitted Encumbrances**");

(ii)        pursuant to section 364(c)(3) of the Bankruptcy Code, a junior perfected lien on, and security interest in, all DIP Collateral that is subject to a Permitted Encumbrance other than a Prepetition Lien, subject to such Permitted Encumbrance; and

(iii)      pursuant to section 364(d)(1) of the Bankruptcy Code, a senior priming perfected lien on, and security interest in, all DIP Collateral that

constitutes Prepetition Collateral, which DIP Liens shall prime and be senior to the Prepetition Liens but be subject and junior to any Permitted Encumbrance that is senior to the Prepetition Liens with respect to the Prepetition Collateral.

**6.    DIP Superpriority Claim.**

(a)    Upon the entry of this Interim Financing Order, effective as of the Petition Date, the DIP Lender is hereby granted pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim (the "**DIP Superpriority Claim**") for all DIP Obligations, (a) which shall rank junior to the Carve-Out and (b) with priority over any and all administrative expense claims, unsecured claims and all other claims asserted against the Debtor (without the need to file a proof of claim) or its estate in the Case or any Successor Case at any time, now existing or hereafter arising of any kind or nature whatsoever, including all other administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code or applicable non-bankruptcy law, and over any and all other administrative expenses, unsecured or other claims arising under any other provision of the Bankruptcy Code. The DIP Superpriority Claim shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered an administrative expense claim allowed under section 503(b) of the

22

Bankruptcy Code, shall be against the Debtor, and shall be payable from and have recourse to all prepetition and postpetition property and assets of the Debtor, including all DIP Collateral. The DIP Superpriority Claim shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Financing Order or any provision hereof is vacated, reversed or stayed in any respect or, except as expressly permitted by the DIP Loan Documents, modified or amended in any manner, on appeal or otherwise.

(b)     The DIP Liens and the DIP Superpriority Claim are valid and enforceable against the Debtor, its estate, any trustee or any other estate representative appointed or elected in the Case or any Successor Case and/or upon the dismissal of the Case or any Successor Case and except as expressly permitted herein or in the DIP Term Sheet or the other DIP Loan Documents, (i) shall not be made subject to or *pari passu* with (A) subject to the entry of the Final Financing Order, any lien, security interest or claim heretofore or hereinafter granted in the Case or any Successor Case, (B) any lien that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code or otherwise or (C) any liens arising after the Petition Date; and (ii) shall not be subject to section 510, 549, 550 or 551 of the Bankruptcy Code or, subject to entry of the Final Financing Order, section 506(c) of the Bankruptcy Code.

7.      **Use of Proceeds of DIP Facility**.

(a)      Subject to the terms and conditions of this Interim Financing Order, the DIP Term Sheet and the other DIP Loan Documents, the Debtor is authorized to use proceeds of the DIP Facility up to the amount of the Interim Financing on an interim basis, only for the purposes, and upon the terms and conditions set forth in the DIP Term Sheet, in accordance with and subject to the Approved Budget (subject to the Permitted Variance) and the terms of this Interim Financing Order and the DIP Loan Documents.

(b)      Upon the occurrence of the date that is the earlier of (i) the first day after the expiration of the Challenge Period (as defined below) without a timely Challenge (as defined below) being brought, or (ii) upon the final resolution of a Challenge brought in compliance with paragraph 13 of this Interim Financing Order and applicable law (where such Challenge did not have the effect of successfully impairing any of the Prepetition Obligations), all Prepetition Obligations shall be deemed no longer subject to objection, challenge, recharacterization, contribution, disgorgement or recovery.

8.      **Lien Perfection**. This Interim Financing Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection and priority of the respective DIP Liens and Adequate Protection Liens (as defined below) without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any

24

jurisdiction or the taking of any other action to validate or perfect the DIP Liens or Adequate Protection Liens or to entitle the DIP Liens or Adequate Protection Liens to the priorities granted herein. Notwithstanding the foregoing, the Debtor shall be authorized to execute and deliver to the DIP Lender all financing statements, security agreements, notices of liens and other similar documents as the DIP Lender may reasonably request to grant, preserve, protect and perfect the validity and priority of the DIP Liens; *provided*, *however*, that notwithstanding anything to the contrary in this Interim Financing Order, the DIP Term Sheet or any other DIP Loan Document, no such filing or recordation shall be necessary or required to perfect the DIP Liens or Adequate Protection Liens, and the Debtor shall not be required to execute or deliver any mortgage, authorize any fixture filing, execute or deliver any agreement providing "control" as defined in section 9-104, 9-105, 9-106 and 9-107 of the Uniform Commercial Code ("**UCC**") as in effect in any relevant jurisdiction or undertake any registration in respect of assets subject to a certificate of title in order to perfect the DIP Liens or the Adequate Protection Liens in any portion of the DIP Collateral, including any and all cash wherever located or held, and all such liens and security interests are hereby deemed fully and automatically perfected. The DIP Lender and/or the Prepetition Lenders may, in their sole discretion, file such financing statements, security agreements, notices of liens and other similar documents, and are hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, security agreements, notices of liens and other similar documents shall be deemed to have been filed or recorded on the Petition Date. The DIP Lender and the Prepetition Lenders, in their sole discretion, may file a copy of this Interim Financing Order as a financing

statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtor has real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Financing Order.

9.    **Adequate Protection of Prepetition Obligations**.

Until the Prepetition Obligations shall have been paid in full[5], as adequate protection against any Diminution in Value of the interests of the Prepetition Lenders in the Prepetition Collateral securing any Prepetition Obligations that may be due or payable to the Prepetition Lenders, the Prepetition Lenders are hereby granted the following adequate protection (subject to the Carve-Out) (collectively, the "**Adequate Protection Obligations**"):

(i)    With respect to any Prepetition Obligations outstanding, the Debtor shall pay to the Prepetition Lender, upon entry of the Interim Financing Order, (1) all accrued and unpaid interest on the Prepetition Obligations, as of the Petition Date, at the non-default rate under the Prepetition Notes; and (2) cash interest on the Prepetition Obligations outstanding under the Prepetition Notes and arising after the Petition Date in the amounts and on the dates as set forth in the Prepetition Notes, calculated at the non-default rate under the Prepetition Notes (it being understood and agreed

---

[5]"**Payment in full**" or "**paid in full**" means the indefeasible payment in full of all applicable obligations (other than any indemnity, unliquidated or contingent claims that are not yet due and payable) and the termination of the applicable lender's obligations to extend credit under the applicable facility.

that such interest payments shall be in lieu of, and not supplemental to, the interest owing under the Prepetition Notes).

(ii)    The Debtor is authorized to pay all prepetition and postpetition out-of-pocket costs and expenses of the Prepetition Lenders to the extent payable under the Prepetition Notes, including the fees and disbursements of counsel to the Prepetition Lenders (collectively, the "**Prepetition Professionals**"). The Prepetition Professionals shall not be required to file any fee applications with the Court but the Prepetition Professionals may provide summary invoices (redacted if necessary for privileged, confidential or otherwise sensitive information) to the U.S. Trustee, counsel for any Committee appointed in the Case and counsel to the Debtor (collectively, the "**Fee Notice Parties**"). If no objection to payment of the requested fees and expenses are made in writing by any of the Fee Notice Parties within ten (10) calendar days after delivery of such invoices (the "**Fee Objection Period**"), then, without further order of, or application to, the Court or notice to any other party, such fees and expenses shall be promptly paid by the Debtor to the extent payable under the Prepetition Notes. If an objection is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested fees and expenses, then only the disputed portion of such fees and expenses shall not be paid until the objection is resolved by the applicable parties in

27

good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtor to the extent payable under the Prepetition Notes.

(iii)     Pursuant to sections 361, 363(e), 364(c) and, solely with respect to the Prepetition Liens, section 364(d), of the Bankruptcy Code, solely to the extent of any Diminution in Value, the Prepetition Lenders are hereby granted, effective as of the Petition Date, continuing, valid, binding, enforceable and fully and automatically perfected postpetition replacement liens on and security interests in (the "**Adequate Protection Liens**") all DIP Collateral (the "**Adequate Protection Collateral**"), which liens shall be (x) senior to the Prepetition Liens and (y) junior to the Carve-Out, the Permitted Encumbrances (other than the Prepetition Liens) and the DIP Liens. Except for the Permitted Encumbrances (other than the Prepetition Liens), the DIP Liens and the Carve-Out, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted or created in the Case or any Successor Case, and shall be valid and enforceable against the Debtor, its estate and any successors thereto, including, without limitation, any trustee appointed in the Case or any Successor Case, and, notwithstanding anything to the contrary in this Interim Financing Order, the Prepetition Notes or in any other Prepetition Loan Document, without the necessity of

28

execution by the Debtor, or the filing or recordation, of any financing statements, security agreements, mortgages, fixture filings, agreements providing "control" as defined in sections 9-104, 9-105, 9-106 and 9-107 of the UCC as in effect in any relevant jurisdiction, filings with a governmental unit, or other documents or the taking of any other action. The Adequate Protection Liens shall not be subject to Challenge (other than to the extent relating to a Challenge to the Prepetition Liens) and shall not be subject to section 549 or 550 of the Bankruptcy Code. Subject to paragraph 13 of this Interim Financing Order, no lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

(iv)    Pursuant to section 507(b) of the Bankruptcy Code, solely to the extent of any Diminution in Value, the Prepetition Lenders are hereby granted an allowed superpriority administrative expense claim (the "**Adequate Protection Superpriority Claim**"), which shall (x) be junior to the Carve-Out and the DIP Superpriority Claim and (y) have priority over any other administrative expense claims, unsecured claims and all other claims against the Debtor or its estate in the Case or any Successor Case, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, all other administrative expense claims or other claims

of the kind specified in or ordered pursuant to sections 105, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c), 507(a) (other than section 507(a)(1)), 507(b), 546(c), 546(d), 1113 and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code. The Adequate Protection Superpriority Claim shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered an administrative expense allowed under section 503(b) of the Bankruptcy Code, shall be against the Debtor and shall be payable from and have recourse to all Adequate Protection Collateral. Except for the DIP Superpriority Claim and the Carve-Out, the Adequate Protection Superpriority Claim shall not be made subject to or *pari passu* with any claim heretofore or hereinafter granted or created in the Case or any Successor Case and shall be valid and enforceable against the Debtor, its estate and any successors thereto, including, without limitation, any trustee appointed in the Case or any Successor Case.

(v)     The Debtor shall provide the Prepetition Lenders with access to (i) financial reports as are provided to the DIP Lender, in each case to the extent set forth in the DIP Term Sheet and (ii) the books and records of the Debtor related to the Prepetition Collateral and the Adequate Protection Collateral as and to the extent required by the Prepetition Notes, and the Prepetition Lenders shall be entitled to

examine and make abstracts from, and copies of, any such books and records.

Any payments made to the Prepetition Lenders pursuant to the foregoing paragraph 9 may be subject to clawback to the extent of a successful Challenge pursuant to paragraph 13 of the Interim Financing Order.

10. **Adequate Protection Reservation**. Notwithstanding anything to the contrary in this Interim Financing Order, the receipt by the Prepetition Lenders of adequate protection provided pursuant to this Interim Financing Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Lenders to seek additional or different forms of adequate protection at any time. Nothing herein or in the DIP Loan Documents shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided hereunder is found by this Court to be insufficient to compensate for any Diminution in Value during the Case.

11. **Maintenance of DIP Collateral; Cash Management**. Unless the DIP Lender otherwise consents in writing, until the payment in full of the DIP Obligations, the Debtor shall continue to maintain all property, operational and other insurance as and to the extent required and specified in the DIP Loan Documents. Upon entry of this Interim Financing Order and to the fullest extent provided by applicable law, the DIP Lender shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payees on each insurance policy maintained by the Debtor that in any way relates to the DIP Collateral.

12. **Limitations on the Use of Proceeds**. None of the DIP Facility, the DIP Collateral, the Prepetition Collateral, the DIP Loans, Cash Collateral, proceeds of any of the foregoing, any portion of the Carve-Out or any other funds may be used, directly or indirectly, by any of the Debtor, any Committee, if any, or any trustee or other estate

31

representative appointed in the Case or any Successor Case or any other person or entity to do any of the following (nor shall any professional fees, disbursements, costs or expenses be paid in connection therewith): (a) to object to, contest, prevent, hinder, delay or interfere with, in any way, the DIP Lender's or the Prepetition Lenders' enforcement or realization upon any of the DIP Collateral, the Prepetition Collateral or the Adequate Protection Collateral (as applicable) once a DIP Termination Event (as defined below) and/or a Cash Collateral Termination Event (as defined below) occurs (other than with respect to rights otherwise granted herein with respect to the DIP Remedies Notice Period and/or the Cash Collateral Remedies Notice Period); (b) to object to or challenge in any way the DIP Liens, the DIP Obligations, the Prepetition Liens, the Prepetition Obligations, the DIP Collateral (including Cash Collateral), the Adequate Protection Collateral or the Prepetition Collateral or any other claims or liens held by or on behalf of any of the DIP Lender or the Prepetition Lenders, respectively, in each case in their capacity as such; or (c) to investigate (including by way of examinations or discovery proceedings, whether formal or informal), prepare, assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse in any material respect to the interests of, any of the Prepetition Released Parties with respect to any transaction, occurrence, omission, action or other matter arising under, in connection with or related to this Interim Financing Order, the DIP Facility, the DIP Loan Documents or the Prepetition Loan Documents, including, without limitation, (A) any claims or causes of action arising under chapter 5 of the Bankruptcy Code, (B) any so-called "lender liability" claims and

causes of action, (C) any claim or cause of action with respect to the validity, enforceability, priority and extent of, or asserting any defense, counterclaim, or offset to, the DIP Obligations, the DIP Superpriority Claim, the DIP Liens, the DIP Loan Documents, the Adequate Protection Superpriority Claim, the Adequate Protection Liens, the Prepetition Loan Documents, the Prepetition Liens or the Prepetition Obligations, (D) any claim or cause of action seeking to challenge, invalidate, modify, set aside, seek contribution for, avoid, marshal, subordinate, disallow, or recharacterize in whole or in part, the DIP Obligations, the DIP Liens, the DIP Superpriority Claim, the DIP Collateral, the Prepetition Obligations, the Prepetition Liens, the Adequate Protection Superpriority Claim, the Adequate Protection Liens and the Prepetition Collateral, (E) any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to the DIP Lender or the Prepetition Lenders hereunder or under any of the DIP Loan Documents or the Prepetition Lenders under any of the Prepetition Loan Documents (in each case, including, without limitation, claims, proceedings or actions that has the effect of preventing, hindering or delaying any of the DIP Lender's or the Prepetition Lenders' assertions, enforcements, realizations or remedies on or against the DIP Collateral or the Prepetition Collateral in accordance with the applicable DIP Loan Documents, Prepetition Loan Documents and this Interim Financing Order; *provided, however,* that an amount no more than $50,000 in the aggregate, to be incurred solely by any Committee, of the DIP Collateral, Prepetition Collateral, Cash Collateral or the Carve-Out, or proceeds from the borrowings under the DIP Facility or any other amounts, may be used, in each case solely in accordance with the Approved Budget, for allowed fees and expenses in investigating (but not initiating, commencing, litigating or

prosecuting (including by way of formal discovery)) any potential Challenge, within the applicable Challenge Period (as defined below).

13.    **Reservation of Certain Third Party Rights**.

(a)    Each of the Debtor's Stipulations, waivers and releases are and shall be binding upon the Debtor under all circumstances and for all purposes, and the Debtor is deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date.

(b)    Each of the Debtor's Stipulations, and the waivers and releases, are and shall be binding upon the Debtor's estate, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative appointed in the Case or any Successor Case and all parties-in-interest, including, without limitation, any Committee and any person or entity acting on behalf of the Debtor's estate, unless: (1) such Committee or such other party interest obtains requisite standing by the Court, has timely commenced an adversary proceeding or contested matter (subject to the limitations contained in this paragraph 13) by no later than that the date (the "**Challenge Period Expiration Date**") that is the earlier of (a) sixty (60) calendar days from the date of the appointment of a Committee or (b) seventy-five (75) calendar days from the date of the entry of this Interim Financing Order, provided, however, that if, prior to the end of the Challenge Period, the Case converts to chapter 7, the trustee shall have the later of the remaining Challenge Period or 10 days (such period, the "**Challenge Period**"), objecting to or challenging the amount,

34

validity, perfection, enforceability, priority or extent of the Prepetition Obligations, the Prepetition Liens or the Prepetition Loan Documents (as applicable) or otherwise asserting or prosecuting any other claims, counterclaims, causes of action, objections or challenges against the Prepetition Released Parties in connection with the Prepetition Obligations, the Prepetition Liens or the Prepetition Loan Documents (each, a "**Challenge**"); or (2) a final non-appealable judgment and order is entered by a court of competent jurisdiction in favor of the plaintiff in connection with any such Challenge. If any such Challenge is timely filed and remains pending and the Case is converted to chapter 7, the chapter 7 trustee may continue to prosecute such Challenge on behalf of the Debtor's estate. The Challenge Period Expiration Date may only be extended with the prior written consent of the Prepetition Lenders or by further order of the Court for good cause shown, in each case, prior to the Challenge Period Expiration Date.

(c)     If no such Challenge is timely and properly filed within the Challenge Period, or, as to any matter for which a Challenge has been timely and properly filed, a final non-appealable judgment and order of a court of competent jurisdiction has been entered in favor of the defendant, then:

(i)       the Debtor's agreements, acknowledgements and stipulations contained in this Interim Financing Order, including in paragraph F of this Interim Financing Order, shall be irrevocably binding on the Debtor, its estate and successors thereto, any Committee and all

35

parties-in-interest and any and all successors-in-interest to each of the foregoing, without further action by any party or this Court, each of whom shall thereafter be forever barred from bringing any Challenge with respect thereto;

(ii)     the Prepetition Liens shall be deemed to constitute valid, binding, enforceable and perfected liens and security interests not subject to avoidance or disallowance pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(iii)    the Prepetition Obligations shall be deemed to be finally allowed claims for all purposes against the Debtor for all purposes in the Case and any Successor Case, and shall not be subject to defense, claim, counterclaim, recharacterization, contribution, subordination, offset or avoidance under the Bankruptcy Code or applicable law; and

(iv)     each of the Prepetition Released Parties shall be deemed to be forever released, waived and discharged (whether in their pre- or post-petition capacity) from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Prepetition Liens, the Prepetition Obligations and the Prepetition Loan Documents as of the date of this Interim Financing Order.

(d)     Notwithstanding anything to the contrary in this Interim Financing Order: (x) if any such Challenge is timely commenced, the stipulations contained in paragraph F of this Interim Financing Order shall nonetheless remain

36

binding and preclusive on all parties-in-interest other than the party that has brought such Challenge in connection therewith except to the extent that such stipulations are successfully challenged in such Challenge in a final non-appealable judgment; (y) the Prepetition Lenders reserve their rights to contest on any grounds any Challenge; and (z) the Prepetition Lenders preserve any and all of their rights to appeal and stay any orders of the Court issued in connection with such successful Challenge. For the avoidance of doubt, nothing in this Interim Financing Order vests or confers on any person (as defined in the Bankruptcy Code) standing or authority to pursue any cause of action belonging to the Debtor or its estate.

14.    **No Inconsistent Interests.**    To the fullest extent permitted by the Bankruptcy Code or applicable law, any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document or other instrument or agreement that requires the consent of any party or the payment of any fees or obligations to any governmental entity or non-governmental entity in order for the Debtor to pledge, grant, mortgage, sell, assign or otherwise transfer any fee or leasehold interest or the proceeds thereof or any other DIP Collateral is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code and shall have no force or effect with respect to the DIP Liens on such leasehold interests or such other DIP Collateral or the proceeds of any assignment and/or sale thereof by the Debtor in favor of the DIP Lender in accordance with the terms of the DIP Loan Documents and this Interim Financing Order.

37

15.    **Carve-Out.**

(a)      Subject to the terms and conditions contained in this paragraph 15, the DIP Liens, the DIP Superpriority Claim, the Prepetition Liens, the Adequate Protection Liens and the Adequate Protection Superpriority Claim shall be subject and subordinate to a carve-out (the "**Carve-Out**"), which shall comprise the following: (i) all fees required to be paid to the Clerk of the Court and to the Office of the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable and documented fees and expenses, in an aggregate amount not to exceed $50,000, incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); and (iii) all accrued and unpaid fees, costs and expenses (the "**Estate Professional Fees**") incurred by persons or firms retained by the Debtor or any Committee, if any, pursuant to section 327, 328, 330, 363 or 1103 of the Bankruptcy Code (collectively, "**Estate Professionals**") (x) at any time before or on the day of delivery by the DIP Lender of a Carve-Out Trigger Notice (as defined below), whether allowed by the Court by interim order, final order, procedural order, or otherwise, in an aggregate amount not to exceed the amounts set forth on the line items for each respective Estate Professional in the Approved Budget (whenever such amounts may be incurred prior to or on the date of the delivery of a Carve-Out Trigger Notice), less any retainers held by such Estate Professionals, which amount shall be funded into an

38

account for such fees (the "**Professional Fee Account**") on Friday of each week (or such other day of the week agreed by the Debtor and the DIP Lender) in accordance with the Approved Budget (with the amounts set forth on a monthly basis in the Approved Budget prorated for such week) provided that (I) the Debtor has sufficient availability under the DIP Facility on such date (if not, the Debtor shall promptly notify the Estate Professionals), (II) a DIP Termination Event has not occurred, and (III) no DIP Termination Date has occurred and is continuing, and (y) after the date (the "**Trigger Date**") on which the DIP Lender provides written notice stating that such notice is a "Carve-Out Trigger Notice" (the "**Carve-Out Trigger Notice**") that a DIP Termination Event has occurred and has triggered the Carve-Out, to the extent allowed at any time, the payment of any Estate Professional Fees of Estate Professionals (the "**Allowed Estate Professional Fees**") in an amount not exceeding $100,000 in the aggregate incurred after the Trigger Date (the "**Post-Carve-Out Trigger Notice Cap**").  The dollar limitation in clause (iii)(y) above on fees and expenses shall not be reduced or increased by the amount of any compensation or reimbursement of expenses paid prior to the occurrence of a DIP Termination Event in respect of which the Carve-Out is invoked.  Notwithstanding anything to the contrary contained in this Interim Order, (A) until a Default, Event of Default, DIP Termination Event or the DIP Termination Date has occurred, and subject to the satisfaction of the other terms and conditions contained herein and in the

DIP Term Sheet and the other DIP Loan Documents, the Debtor shall be permitted to borrow under the DIP Term Sheet and the other DIP Loan Documents as needed to fund the Professional Fee Account in the amounts contemplated under clause (x) of this paragraph 15(a), subject to there being sufficient availability under the DIP Facility for such borrowings, (B) the Debtor shall be permitted to pay, from the Professional Fee Account, as and when the same may become due and payable, the Allowed Estate Professional Fees in accordance with the Approved Budget regardless of whether a DIP Termination Event or the DIP Termination Date has occurred and (C) the aggregate amount of Allowed Estate Professional Fees paid by the Debtor to any Estate Professional prior to the delivery of a Carve-Out Trigger Notice (including from any retainers held by such Estate Professionals and from any amounts funded into the Professional Fee Account pursuant to clause (x) of this paragraph 15(a)), shall not exceed the amount of Allowed Estate Professional Fees for such Estate Professional set forth in the Approved Budget through the date of delivery of such Carve-Out Trigger Notice (in an aggregate amount through such date for the applicable Estate Professional).  Any amounts in the Professional Fee Account after the payment in full of all Allowed Estate Professional Fees pursuant to final fee applications and orders shall be returned to the DIP Lender, which amounts shall be applied to the DIP Obligations.  The DIP Liens will attach to the Debtor's residual interest in such excess.

(b)      On the Trigger Date, the Debtor shall promptly provide notice by email to all Estate Professionals, at the email addresses set forth in each Estate Professional's notice of appearance filed with the Court (or, if there is no such notice of appearance, at such Estate Professional's last known email address) informing them that a Carve-Out Trigger Notice has been received and further advising them that the Debtor's ability to pay Estate Professional Fees is subject to and limited by the Carve-Out.

(c)      Nothing herein or in any of the DIP Loan Documents shall be construed as consent to the allowance of any particular professional fees or expense of the Debtor, of any Committee, or of any other person or shall affect the right of the DIP Lender or the Prepetition Lenders to object to the allowance and payment of such fees and expenses. The DIP Lender and the Prepetition Lenders shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Estate Professionals incurred in connection with the Case or any Successor Case under any chapter of the Bankruptcy Code. Nothing in the Interim Financing Order or otherwise shall be construed to obligate the DIP Lender or the Prepetition Lenders in any way to pay compensation to or to reimburse expenses of any Estate Professional, or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement.

(d)      For the avoidance of doubt, the DIP Lender shall have no obligation to lend or advance any additional funds to or on behalf of Debtor, or provide any other financial accommodations to Debtor, immediately upon or after

41

the occurrence of a DIP Termination Event, or upon the occurrence of any act, event or condition that, with the giving of notice or the passage of time, or both, would constitute a DIP Termination Event.

(e)     For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Financing Order or in the DIP Loan Documents, the Carve-Out shall be senior to all liens and claims securing the DIP Facility and the Prepetition Notes, and any and all other forms of liens or claims securing the DIP Obligations and the Prepetition Obligations.

16.     **Proceeds of Subsequent Financing**. If at any time prior to the payment in full of the DIP Obligations and the Prepetition Obligations, the Debtor, the Debtor's estate, any trustee, any examiner or any responsible officer subsequently appointed in the Case or the Successor Case, shall obtain credit or incur debt pursuant to section 364(b), (c) or (d) of the Bankruptcy Code or in violation of this Interim Financing Order, the DIP Term Sheet or the other DIP Loan Documents, then all of the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Lender for application in accordance with this Interim Financing Order, the DIP Term Sheet and the other DIP Loan Documents.

17.     **Disposition of Collateral**. The Debtor shall not sell (including, without limitation, any sale and leaseback transaction), transfer (including any assignment of rights), lease, encumber or otherwise dispose of any portion of the DIP Collateral or the Prepetition Collateral, except as expressly permitted by the DIP Loan Documents or the Prepetition Loan Documents, as applicable.

18.     **Termination Events**.

42

(a)  Each of the following occurrences or events shall constitute a termination event under this Interim Financing Order (each, a "**DIP Termination Event**", and the date upon which such DIP Termination Event occurs, the "**DIP Termination Date**") unless waived in writing by the DIP Lender: (i) the occurrence of the scheduled maturity date of the DIP Facility; (ii) the forty-fifth (45th) day after the Petition Date, if the Final Financing Order, in form and substance satisfactory to the DIP Lender in its sole discretion, has not been entered by the Court by such date; (iii) the consummation of a sale of all or substantially all of the Debtor's assets; (iv) the date of substantial consummation (as defined in section 1101 of the Bankruptcy Code) of any chapter 11 plan; and (v) the occurrence and continuation of an Event of Default (as defined in the DIP Term Sheet).

(b)  With respect to the Cash Collateral of the Prepetition Lenders, the occurrence of any of the following occurrence or events at any time prior to payment in full of all Prepetition Obligations shall constitute a "**Cash Collateral Termination Event**" under this Interim Financing Order, unless waived in writing by each of the Prepetition Lenders: (i) the occurrence of a DIP Termination Event, (ii) the material breach by the Debtor of any of the adequate protection provisions contained herein, (iii) the invalidation or impairment of the Adequate Protection Liens or Adequate Protection Superpriority Claim, or (iv) the Debtor seeking to grant a lien or to incur a claim *pari passu* with or senior to the Adequate

Protection Liens or Adequate Protection Superpriority Claim (in each case, except to the extent expressly contemplated or permitted hereunder).

19. **Rights and Remedies Upon DIP Termination Event or Cash Collateral Termination Event; Modification of Automatic Stay.**

(a)     Any automatic stay otherwise applicable to the DIP Lender, whether arising under section 105 or 362 of the Bankruptcy Code or otherwise, is hereby modified, without further notice to, hearing of, or order from this Court, to the extent necessary to permit the DIP Lender, upon the occurrence and during the continuation of a DIP Termination Event, to exercise all rights and remedies provided for in this Interim Financing Order, the DIP Term Sheet, any of the other DIP Loan Documents or applicable law, including, without limitation, to (i) declare the termination, reduction or restriction of any further Commitment to the extent any such Commitment remains under the DIP Facility, (ii) declare all DIP Obligations to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Debtor, (iii) the termination of the DIP Loan Documents as to any future liability or obligation of the DIP Lender, but without affecting any of the DIP Liens or the DIP Obligations of the Debtor, (iv) enforce any and all rights against the DIP Collateral under the DIP Loan Documents and (v) take any other actions or exercise any other rights or remedies permitted under this Interim Financing Order, the DIP Term Sheet, the other DIP Loan Documents or applicable law; *provided* that,

prior to the exercise of any right in clause (iv) and (v) of this paragraph, the DIP Lender shall provide five (5) business days' written notice (which may be via electronic mail or other electronic means) to counsel to the Debtor, counsel to any Committee and the U.S. Trustee of its intent to exercise such rights and remedies (the "**DIP Remedies Notice Period**"). During the DIP Notice Remedies Period, the Debtor and any other party in interest may request an emergency hearing before the Court where the Court may consider whether a DIP Termination Event has occurred and/or is continuing and such other matters that the Court may wish to consider.

(b)    Upon the occurrence of a Cash Collateral Termination Event, the Prepetition Lenders, acting collectively, may, upon five (5) business days' written notice of intent to terminate the use of Cash Collateral to counsel to the Debtor, counsel to any Committee and the U.S. Trustee (the "**Cash Collateral Remedies Notice Period**") terminate the use of Cash Collateral. During the Cash Collateral Remedies Notice Period, the Debtor shall be permitted to continue to use Cash Collateral to pay payroll obligations (other than severance) and other expenses critical to keep the business of the Debtor operating and to fund the Carve-Out, in each case, subject to the Approved Budget. During the Cash Collateral Remedies Notice Period, the Debtor and any other party in interest may request an emergency hearing before the Court where the Court may consider whether a Cash Collateral Termination Event has occurred and/or is continuing and such other matters that the Court may wish to consider.

45

Unless the Court orders otherwise during the Cash Collateral Remedies Notice Period, the automatic stay shall automatically be terminated at the end of the Cash Collateral Remedies Notice Period to permit the Prepetition Lenders to immediately terminate the Debtor's rights, if any, under this Interim Financing Order to use Cash Collateral.

(c)    The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of this Interim Financing Order as necessary to permit (a) the Debtor to grant the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Liens and the Adequate Protection Superpriority Claim, (b) the Debtor to incur all DIP Obligations and pay all fees, costs and expenses under the DIP Term Sheet and the other DIP Loan Documents, and (c) the implementation of all of the terms, rights, benefits, privileges and remedies of this Interim Financing Order and the DIP Loan Documents, in each case, without further notice, hearing or order of the Court.

20.    **Proofs of Claim**. Neither the DIP Lender nor the Prepetition Lenders shall be required to file proofs of claim in the Case or any Successor Case for any claim allowed in this Interim Financing Order. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in the Case or any Successor Case to the contrary, the DIP Lender and the Prepetition Lenders are hereby authorized and entitled, in their sole and absolute discretion, but not required, to file (and amend and/or supplement, as each sees fit) a proof of claim and/or aggregate proofs of claim in each of the Case or any Successor Case for any claim allowed in this Interim Financing Order.

Any proof of claim filed by the DIP Lender or the Prepetition Lenders shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by the DIP Lender or the Prepetition Lenders. Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation administrative claims) in the Case or any Successor Case shall not apply to the DIP Lender or the Prepetition Lenders.

21.    **Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Financing Order**. The DIP Lender and the Prepetition Lenders have acted in good faith in connection with the DIP Facility, and their reliance upon this Interim Financing Order is in good faith. Based on the findings set forth in this Interim Financing Order and the record made at the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Financing Order are hereafter modified, amended, vacated or stayed by a subsequent order of this Court or any other court, the DIP Lender and Prepetition Lenders are entitled to all the protections and benefits provided by section 364(e) of the Bankruptcy Code.

22.    **Expenses**. The Debtor is authorized to pay all prepetition and postpetition fees, costs, disbursement and expenses of the DIP Lender that are payable by Debtor in accordance with the DIP Loan Documents and this Interim Financing Order. Any invoice for any such fees and expenses may be in summary form (and may be redacted for privilege or confidentiality concerns), and shall be sent to the Fee Notice Parties. If no objection to payment of the requested fees and expenses are made, in writing by any of the Fee Notice Parties within the Fee Objection Period, then, without further order of, or

application to, the Court or notice to any other party, such fees and expenses shall be paid by the Debtor to the extent payable in accordance with the terms of the DIP Loan Documents. If an objection is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested fees and expenses, then only the disputed portion of such fees and expenses shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be paid by the Debtor to the extent payable in accordance with the terms of the DIP Term Sheet.

23.    **Indemnification**. The Debtor is authorized to indemnify and hold harmless the DIP Lender (solely in its capacity as such) and each of the Indemnified Persons (as defined in the DIP Term Sheet) (solely in their capacities as such) in accordance with and subject to the terms and conditions of the DIP Term Sheet.

24.    **Binding Effect**. The provisions of this Interim Financing Order shall be binding upon and inure to the benefit of the Debtor, the DIP Lender, the Prepetition Lenders and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor), any and all creditors of the Debtor, any Committee and any other parties in interests and each of their respective successors and assigns, whether in the Case, in any Successor Case, or upon dismissal of any such chapter 11 or chapter 7 case.

25.    **No Waiver by Failure to Seek Relief**. The failure at any time of the DIP Lender or the Prepetition Lenders to require strict performance by the Debtor of any provision of this Interim Financing Order, or to seek relief or otherwise exercise their

rights and remedies under this Interim Financing Order, the DIP Term Sheet or the other DIP Loan Documents or otherwise, shall not prejudice or constitute a waiver of any of the DIP Lender's or Prepetition Lenders' rights hereunder, thereunder, or otherwise. None of the rights or remedies of any party under this Interim Financing Order shall be deemed to have been amended, modified, suspended or waived unless such amendment, modification, suspension or waiver is in writing and signed by the party against whom enforcement is sought. No consents required hereunder by any of the DIP Lender or the Prepetition Lenders shall be implied by any inaction or acquiescence by any of the DIP Lender or the Prepetition Lenders.

26. **Rights Reserved**. Notwithstanding anything to the contrary in this Interim Financing Order, the entry of this Interim Financing Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights, claims, privileges, objections, defenses or remedies of the DIP Lender or the Prepetition Lenders under the Bankruptcy Code or under applicable non-bankruptcy law against any other person or entity in any court, including without limitation, the right of the DIP Lender or Prepetition Lenders (i) to request conversion of the Case to a case under chapter 7, dismissal of the Case, or the appointment of a trustee in the Case; (ii) to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan; (iii) to request modification of the automatic stay; or (iv) to exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) on behalf of the DIP Lender or the Prepetition Lenders, as applicable.

27. **No Third Party Rights**. Except as explicitly provided for herein, this Interim Financing Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party or incidental beneficiary.

28. **Section 506(c) Waiver**. As a material inducement to the DIP Lender to agree to provide the DIP Facility, and in exchange for (a) the DIP Lender's willingness to provide the DIP Facility and its agreement to subordinate its liens and superpriority claims to the Carve-Out to the extent set forth herein, (b) the Prepetition Lenders' agreement to subordinate their Prepetition Liens to the Carve-Out and the DIP Liens to the extent set forth herein and (c) the consensual use of Cash Collateral in accordance with and subject to the terms of this Interim Financing Order (and without prejudice to the contention of the DIP Lender that section 506(c) of the Bankruptcy Code does not apply to the DIP Facility), upon entry of the Final Financing Order, no costs or expenses of administration which have been or may be incurred in the Case at any time, including, without limitation, any costs and expenses incurred in connection with the preservation, protection or enhancement of realization by the DIP Lender upon the DIP Collateral or by the Prepetition Lenders upon the Prepetition Collateral, shall be charged against the DIP Lender, the DIP Obligations, the DIP Collateral or any of the Prepetition Lenders, the Prepetition Obligations or the Prepetition Collateral pursuant to section 105 or 506(c) of the Bankruptcy Code or otherwise without the prior express written consent of the DIP Lender or the Prepetition Lenders (as applicable), in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors (including, without limitation, consent to the Carve-Out), in each case, except for the Carve-Out.

29.   **Estate Professional Fees and Expenses**.  Beginning on the third business day of each week starting with the first full calendar week following the Petition Date, each Estate Professional shall deliver to the DIP Lender a statement setting forth a good-faith estimate of the amount of fees and expenses incurred during the preceding week by such Estate Professional (through Saturday of such week, the "**Calculation Date**") (collectively, "**Estimated Fees and Expenses**"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtor (each such statement, a "**Weekly Statement**"); provided that, within one (1) business day of receiving notice from the DIP Lender of the occurrence of a DIP Termination Event, each Estate Professional shall deliver one additional statement (the "**Final Statement**") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the relevant DIP Termination Date.

30.   **Section 552(b)**.  Subject to entry of the Final Financing Order, the Prepetition Lenders are and shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, upon entry of the Final Financing Order, the "equities of the case" exception under section 552(b) shall not apply to the Prepetition Lenders or the Prepetition Obligations.

31.   **No Marshalling**. Subject to the entry of the Final Financing Order, the DIP Lender and the Prepetition Lenders shall not be subject to the equitable doctrine of

"marshaling" or any other similar doctrine with respect to any of the DIP Collateral, Prepetition Collateral or Adequate Protection Collateral.

32.    **Amendments**. Notwithstanding anything contained herein to the contrary, no amendment, modification or supplement of any of the DIP Loan Documents shall be effective unless in writing and in accordance with the applicable DIP Loan Documents. Subject to the terms and conditions of the applicable DIP Loan Documents, the Debtor and the DIP Lender may make any nonmaterial amendment, modification or supplement of any provision of the DIP Term Sheet or the other DIP Loan Documents, and the Debtor is authorized to enter into any such amendment, modification, supplement or waiver, without further notice to or approval of the Court, provided that notice (which may be provided via electronic mail or other electronic means) of such nonmaterial amendment, modification, supplement or waiver shall be provided to the U.S. Trustee and counsel to any Committee. In the case of any material amendment, modification, or supplement to the DIP Loan Documents (a "**Material Amendment**"), the Debtor shall provide notice (which may be provided via electronic mail or other electronic means) to the U.S. Trustee and counsel to any Committee, each of whom shall have five (5) business days to object in writing to such Material Amendment. If no objections are timely received (or if the Notice Parties indicate via electronic mail that they have no objection) to the Material Amendment, the Debtor may submit an order to the Court approving such Material Amendment under certification of counsel. If either party timely objects to such Material Amendment and such objection cannot be consensually resolved, the Debtor shall request that the Court schedule a hearing (which shall be sought by the Debtor on an expedited basis) to consider approval of the Material Amendment.

33.     **Priority of Terms**. To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Term Sheet, the other DIP Loan Documents, the Motion, any other order of this Court (including, without limitation, the Cash Management Order), or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Financing Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as set forth in" any of the DIP Loan Documents, the terms and provisions of this Interim Financing Order shall govern.

34.     **Survival of Interim Financing Order**. The provisions of this Interim Financing Order and any actions taken pursuant hereto shall survive and shall not be modified, impaired or discharged by entry of any order which may be entered (i) confirming any chapter 11 plan in the Case, (ii) converting the Case to a case under chapter 7 of the Bankruptcy Code, (iii) dismissing the Case, (iv) withdrawing of the reference of the Case from this Court or (v) providing for abstention from handling or retaining of jurisdiction of the Case in this Court. The terms and provisions of this Interim Financing Order, including (a) the DIP Liens, DIP Superpriority Claim, and other rights, privileges, benefits and protections afforded herein and in the DIP Loan Documents to the DIP Lender and (b) the Adequate Protection Liens and the Adequate Protection Superpriority Claim granted pursuant to this Interim Financing Order, shall continue in full force and effect notwithstanding the entry of such order, and shall maintain their respective priorities as provided by this Interim Financing Order, the DIP Term Sheet and the other DIP Loan Documents (as the case may be) until the payment in full of the DIP Obligations or the Prepetition Obligations (as applicable), and this Court

shall retain jurisdiction, notwithstanding dismissal of the Case, for the purposes of enforcing the foregoing to the extent permitted by applicable law.

35.   **Enforceability**. This Interim Financing Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof. Any finding of fact shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is stated as a finding of fact.

36.   **Waiver of Any Applicable Stay**. This Interim Financing Order shall be effective upon its entry and not subject to any stay (all of which are hereby waived), notwithstanding anything to the contrary contained in Bankruptcy Rule 4001(a)(3), 6004 or any other Bankruptcy Rule.

37.   **Discharge**. Subject to entry of the Final Financing Order, the DIP Obligations and the obligations of the Debtor with respect to adequate protection hereunder shall not be discharged by the entry of an order confirming any plan in the Case, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been paid in full, on or before the effective date of such confirmed plan, or the DIP Lender (or the Prepetition Lenders, as applicable) has otherwise agreed in writing.

38.   **Limitation of Liability**. In determining to make any loan under the DIP Loan Documents pursuant to this Interim Financing Order, the DIP Term Sheet or the other DIP Loan Documents, the DIP Lender solely in its capacity as such shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible

person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).

39.     **Release of Claims and Defenses**.  Subject to entry of the Final Financing Order, the Debtor hereby releases and discharges the DIP Lender, solely in its capacity as such, together with its affiliates, subsidiaries, agents, officers, directors, shareholders, employees, members, managers, agents, attorneys, advisors, professionals, predecessors in interest, successors and assigns   (solely in their respective capacities as such) (collectively, the "**DIP Released Parties**"), from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the DIP Loan Documents or any loans under the DIP Facility, any aspect of the relationship between the Debtor, on the one hand, and any or all of the DIP Released Parties, on the other hand, relating to any of the DIP Loan Documents or any transaction contemplated thereby or any other acts or omissions by any or all of the DIP Released Parties in connection with the DIP Facility or any of the DIP Loan Documents or their prepetition relationship with the Debtor or any affiliate thereof relating to any of the DIP Loan Documents or any transaction contemplated thereby, including, without limitation, any claims or defenses under chapter 5 of the Bankruptcy Code or any other causes of action.

40.     **Right to Credit Bid**.  In each case, subject to the terms and conditions of the DIP Loan Documents or the Prepetition Loan Documents, each of the DIP Lender and, subject to entry of the Final Financing Order, the Prepetition Lenders shall have the unqualified right to "credit bid" up to the full amount of the DIP Obligations or the

Prepetition Obligations, as applicable, in connection with any sale or other disposition of all or any portion of the DIP Collateral or the Prepetition Collateral, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code.

      **41.**    <u>**Final Hearing**</u>.

(a)    The Final Hearing to consider entry of the Final Financing Order and final approval of the DIP Facility is scheduled for June 20, 2019, at 3:00 p.m. (Prevailing Eastern Time) at the United States Bankruptcy Court for the District of Delaware.

(b)    Any party in interest wishing to object to the entry of the proposed Final Financing Order shall file written objections with the Clerk of the Court no later than June 13, 2019 at 4:00 p.m. (Prevailing Eastern Time), which objections shall be served on the following parties: (a) proposed counsel for the Debtor, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067 (Attn: Jeffrey W. Dulberg and Robert M. Saunders; jdulberg@pszjlaw.com, rsaunders@pszjlaw.com); (b) co-counsel to the DIP Lender and the Prepetition Lenders, Cravath, Swaine & Moore LLP, Worldwide Plaza, 825 Eighth Avenue, New York, NY 10019 (Attn: George E. Zobitz and Paul L. Sandler; jzobitz@cravath.com, psandler@cravath.com); (c) co-counsel to the DIP Lender and the Prepetition Lenders, Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, DE 19801 (Attn: Paul N. Heath and

Zachary I. Shapiro; heath@rlf.com, shapiro@rlf.com), (d) counsel to any Committee; and (e) the U.S. Trustee (linda.casey@usdoj.gov).

42.    **<u>Retention of Jurisdiction</u>**. The Court has and will retain jurisdiction to hear, determine and, if applicable, enforce the terms of, any and all matters arising from or related to the DIP Facility and/or this Interim Financing Order.

57

**Dated: May 15th, 2019**
**Wilmington, Delaware**

**CHRISTOPHER S. SONTCHI**
**UNITED STATES BANKRUPTCY JUDGE**