# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| JRV GROUP USA L.P.,[1] | Case No. 19-11095(CSS) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: June 20, 2019 @ 3:00 p.m.<br>Objection Deadline: June 13, 2019 @ 4:00 p.m. |
| | Re: Docket No. 7, 29 |

**UNITED STATES TRUSTEE'S OBJECTION TO MOTION OF DEBTOR FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 AND 507 AND FED. R. BANKR. P. 2002, 4001, 6004 AND 9014 (I) AUTHORIZING DEBTOR TO OBTAIN SENIOR SECURED, SUPERPRIORITY, POSTPETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS, (III) APPROVING USE OF CASH COLLATERAL OF PREPETITION LENDERS, (IV) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDERS, (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Andrew R. Vara, Acting United States Trustee for Region 3 ("U.S. Trustee"), by and through his counsel, hereby files this Objection to the Motion of Debtor for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 and Fed. R. Bankr. P. 2002, 4001, 6004 and 9014 (I) Authorizing Debtor to Obtain Senior Secured, Superpriority, Postpetition Financing, (II) Granting Liens and Superpriority Claims, (III) Approving Use of Cash Collateral of Prepetition Lenders, (IV) Granting Adequate Protection to Prepetition Lenders, (V) Modifying the Automatic Stay, (VI) Scheduling Final Hearing, And (VII) Granting Related Relief (D.I. 7) (the "Motion"). In support of the Objection, the U.S. Trustee states as

---

[1] The last four digits of JRV Group USA L.P.'s federal tax identification number are (5218), The mailing address for JRV Group USA L.P. is 1945 Burgundy Place, Ontario, CA 91761.

follow:

## Jurisdiction and Standing

1. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to Title 11 of the United States Bankruptcy Code. Section 586(a)(3)(G) mandates that the U.S. Trustee monitor "…the progress of cases under title 11" and further requires that the U.S. Trustee take "such actions as the United States trustee deems to be appropriate to prevent undue delay in such progress."

2. Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard in this matter.

## Statement of Facts

3. On May 13, 2019, the above-captioned Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. On the Petition Date, the Debtors filed the Motion, seeking authority to obtain post-petition financing from an insider, Corner Flag LLC ("Corner Flag").

5. The interim order approving the post-petition financing included the following provision:

> **Release of Claims and Defenses**. Subject to entry of the Final Financing Order, the Debtor hereby releases and discharges the DIP Lender, solely in its capacity as such, together with its affiliates, subsidiaries, agents, officers, directors, shareholders, employees, members, managers, agents, attorneys, advisors, professionals, predecessors in interest, successors and assigns (solely in their respective capacities as such) (collectively, the "**DIP Released Parties**"), from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the DIP Loan Documents or any loans under the DIP Facility, any aspect of the relationship between the Debtor, on the one hand, and any or all of the DIP Released Parties, on the other hand, relating to any of the DIP Loan Documents or any transaction contemplated thereby or any other acts or omissions by

> any or all of the DIP Released Parties in connection with the DIP Facility or any of the DIP Loan Documents or their prepetition relationship with the Debtor or any affiliate thereof relating to any of the DIP Loan Documents or any transaction contemplated thereby, including, without limitation, any claims or defenses under chapter 5 of the Bankruptcy Code or any other causes of action.

D.I. 29 at ¶ 39.

6. In addition, the Debtors, through the interim order, "acknowledges, agrees and stipulates that:"

> as of the date of this Interim Financing Order, the Debtor and its estate have no claim (as defined in the Bankruptcy Code), objection, challenge, defense, counterclaim or cause of action against any of the Prepetition Lenders or any of their respective affiliates, subsidiaries, agents, officers, directors, shareholders, employees, members, managers, agents, attorneys, advisors, professionals, predecessors in interest, successors and assigns (solely in their respective capacities as such) (collectively, the "*Prepetition Released Parties*") of any kind or nature whatsoever, arising under applicable state or federal law (including, without limitation, any so-called lender liability or equitable subordination claims or defenses, any right to assert any disgorgement or recovery, recharacterization, contribution, subordination, impairment, avoidance or other claims (whether arising under or pursuant to section 105, 510 or 542 through 553 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law or otherwise), arising under, in connection with or related to any of the Prepetition Loan Documents, the Prepetition Obligations or the Prepetition Liens), *and the Debtor on behalf of itself and its estate hereby forever waives and releases any and all such claims, objections, challenges, defenses, counterclaims or causes of action.*

*Id.* at ¶ 14 (italics added).

7. The interim DIP order includes protections for the DIP Lender and Prepetition Lenders that include superpriority claims, DIP and replacement liens, as well as waivers of marshalling and the rights afforded to the estate under 11 U.S.C. § 506(c).

8. The proposed Chapter 11 DIP Budget demonstrates that the cases are, or likely will be, administratively insolvent, and the DIP financing is likely to not be repaid in full.

9. The Debtors have indicated that the purpose of these bankruptcy cases is to, at least in part, fund a process to repurchase Jeeps from consumers that have been recalled for various safety issues and "scrap" the Debtors' remaining inventory of Jeeps. The Debtors have filed two motions seeking authority to commence these activities. D.I. 49 & 50.

## Legal Argument

10. The releases contained in paragraph 39 of the interim order, benefitting the pre- and post-petition insider-lenders and their affiliates and other related parties is not proper for inclusion in an order approving debtor-in-possession financing. Releases such as these are appropriate, if at all, in a confirmed plan.

11. Pursuant to this Court's decision in *In re Tribune Company*, 464 B.R. 126 (Bankr. D. Del. 2011)(Carey, J.), and *In re Washington Mutual, Inc.,* 442 B.R. 314 (Bankr. D. Del. 2011)(Walrath, J.), among others, the Court considers the five factors set forth in *In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del 1999) and *In re Master Mortgage Inv. Fund, Inc.*, 168 B.R. 930, 937-38 (Bankr. W. D. Mo. 1994) to determine whether, notwithstanding § 524(e) of the Code, a *plan* may provide for releases by debtors of non-debtor entities. See *Tribune,* 464 B.R. at 186; *Washington Mutual*, 442 B.R. at 346; *In re Spansion, Inc*., 426 B.R. 114, 142-43, n. 47 (Bankr. D. Del 2010)(Carey, J.); *In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004)(Walrath, J). Those factors are as follows:

    a. identity of interests between debtor and non-debtor releasee, so that a suit against the non-debtor will deplete the estate's resources (e.g., due to a debtor's indemnification of a non-debtor);

    b. substantial contribution to the plan by non-debtor;

    c. necessity of release to the reorganization;

    d. overwhelming acceptance of plan and release by creditors; and

    e. payment of all or substantially all of the claims of the creditors and interest holders under the plan.

*Tribune*, 464 B.R. at 186 (*citing Washington Mutual*, 442 B.R. at 346 (*citing Zenith*, 241 B.R. at 110)). "The factors are neither exclusive nor conjunctive requirements, but simply provide guidance in the Court's determination of fairness." *Id*.

    12.    In the present case, even if the first factor could be established, the remaining four factors cannot be established. Not only is the court not approving a plan through this order, given the Debtors' acknowledgement that the cases are likely administratively insolvent, there likely will not be a confirmed plan in this case.

    13.    The Debtors have the burden to establish whether the *Zenith* factors have been met as to each of the non-debtors released parties. The Debtors cannot do so in this case.

    14.    The Debtors also seek to stipulate that there are no claims against the Pre-Petition Released Parties and release them of any such claims. While stipulations and waivers are typical in DIP orders, subject to a challenge period (such a challenge period is present here), the facts and circumstances of this case call into question the appropriateness of such releases. The pre- and post-petition lenders are insiders, and are benefiting from the repurchase of the Jeeps sold to consumers by eliminating potential damage claims asserted against them and potentially receiving direct releases from the consumers. Under these circumstances, the Debtors should not be waiving and releasing all claims against the insider-lenders and their related persons.

    15.    The Debtors have acknowledged a likelihood that the cases are administratively

insolvent. Without an agreement by the secured creditors to fund all administrative cases of the estates, any waiver of marshalling, and § 506 (c) is improper. While the goal of repurchasing the Jeeps sold to consumers, to protect public safety, is a laudable one, the insider-lenders are receiving significant benefits, including superpriority claim status, DIP liens, adequate protection payments, and, potentially, significant releases of claims. In addition, they directly benefit from the repurchase of the Jeeps and the elimination of potential liability as a result of such repurchase. Under such circumstances, these waivers are inappropriate.

16. Finally, while the U.S. Trustee acknowledges that the Court overruled this objection at the first day hearing, the administrative creditors may not be forced to fund an administratively insolvent case, without regard to the motivations of the insider-lender in funding the cases. The various protections granted to the DIP lender and the pre-petition lenders, which include superpriority claims and DIP- and adequate protection liens, the insider-lender places itself in a superior position to administrative creditors in the event of a default. At a minimum, the superpriority claims and liens should be subject to a carve-out for budgeted administrative claims incurred but unpaid as of the delivery of a "trigger notice."

## **Conclusion**

17.	Because the proposed releases are only appropriate, if at all, in a confirmed plan, and because the cases are administratively insolvent, the Motion should be denied.

WHEREFORE, the United States Trustee requests that this Court deny the Motions.

**Andrew R. Vara,**
**Acting United States Trustee, Region Three**

Dated: June 13, 2019			BY: _____/s/_____
				Linda J. Casey, Esquire
				Trial Attorney
				J. Caleb Boggs Federal Building
				844 King Street, Suite 2207, Lockbox 35
				Wilmington, DE 19801
				(302) 573-6491
				(302) 573-6497 (Fax)